UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


Frank King, Jr.,

      Plaintiff,

      v.                                  Civil Action No. 2:14-cv-184

Carolyn W. Colvin, Acting Commissioner
of Social Security Administration,

      Defendant.


## OPINION AND ORDER
(Docs. 7, 8)

Plaintiff Frank King, Jr. brings this action under 42 U.S.C. § 405(g) of the Social

Security Act, requesting review and reversal of the second decision of the Commissioner of

Social Security, denying his application for disability insurance benefits.  Pending before the

Court are King's motion to reverse the Commissioner's decision (Doc. 7), and the

Commissioner's motion to affirm the same (Doc. 8).  For the reasons stated below, the

Court GRANTS King's motion, in part; DENIES the Commissioner's motion; and

REMANDS for further proceedings and yet another decision.

## Background

King was 53 years old on his amended alleged disability onset date of

November 8, 2001.  He completed school through the 11th grade and thereafter received a

GED.  He has worked as a truck driver, a highway maintenance worker, and a highway

maintenance supervisor.  His most significant work was as a bridge mechanic for the State

of Vermont, starting in approximately 1969 and continuing in various related state jobs for nearly 30 years.  This work was labor-intensive, requiring King to be on his feet all day, exerting his upper extremities for much of the time.

King began experiencing pain in his shoulders and knees in the late 1980s.  In July 1996, he accepted early retirement, hoping to find a less physically demanding job that he could do on a full- or part-time basis.  But his pain worsened after his 1996 retirement, and he has not returned to work, other than doing infrequent temporary jobs as a commercial driver.

In December 2009, King filed an application for disability insurance benefits, alleging disability beginning July 31, 1996 (AR 148) due to arthritis in his shoulders and knee problems (AR 165).  In a March 2010 disability report, King stated that his shoulder pain prevented him from doing things around the house and getting a good night's sleep, and made it difficult to reach.  (AR 198.)  He also stated that he had back and foot pain. (*Id.*)  In a later disability report, King stated that he had "[c]ontinued chronic pain," and that the arthritis in his knees and hands continued to progressively worsen.  (AR 201.)

King's disability application was denied initially and upon reconsideration, and he timely requested an administrative hearing.  Administrative Law Judge (ALJ) Paul Martin conducted the hearing on June 8, 2011.  (AR 525–61.)  Just before the hearing, King amended his alleged disability onset date from July 31, 1996 to November 8, 2001, making the alleged disability period from November 8, 2001 through December 31, 2001, his date last insured.  (AR 528.)  King appeared and testified at the hearing, and was represented by counsel.  A vocational expert (VE) also appeared and testified at the hearing.  (AR 547–61.)

On June 24, 2011, the ALJ issued a decision finding that King was not disabled under the

Social Security Act during the alleged disability period.  (AR 9–16.)  Thereafter, the

Appeals Council denied King's request for review, rendering the ALJ's decision the final

decision of the Commissioner.  (AR 1–3.)  Having exhausted his administrative remedies,

King filed an action in this Court on

December 12, 2012.

On July 31, 2013, finding that the Commissioner failed to meet her burden at step

five, the Court remanded the case to the Commissioner for further administrative

proceedings.  (AR 582–98.)  The Appeals Council then remanded the case to ALJ Martin

for a second administrative hearing, which occurred on May 8, 2014.  (AR 473–524.)  King

appeared and testified again, represented by counsel.  Another VE also appeared and

testified at the hearing.  (AR 491–522.)  On May 23, 2014, the ALJ issued a second decision

on King's claim, again finding that King was not disabled during the alleged disability

period.  (AR 457–66.)  On August 18, 2014, King filed the Complaint in this action.

(Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.

*See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ

to determine whether the claimant is presently engaging in "substantial gainful activity."

20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires

the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R.

§§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the

third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, in his most recent decision on King's claim, ALJ Martin first determined that King had not engaged in substantial gainful activity during the period from his amended alleged disability onset date of November 8, 2001 through his date last insured of December 31, 2001. (AR 459.) At step two, the ALJ found that King had

4

the following severe impairments: "amblyopia[1] of the left eye, degenerative arthritis of the

knees and ankles, bursitis of the left shoulder, degenerative arthritis of the right [joint

between the collarbone and the top of the right shoulder blade,] and arthritic changes of the

hands." (AR 460.)  At step three, the ALJ determined that none of King's impairments,

alone or in combination, met or medically equaled a listed impairment. (AR 461.)  Next, the

ALJ determined that King had the RFC to perform "light work," as defined in 20 C.F.R.

§ 404.1567(b), except as follows:

> [King] was limited from standing and walking more than 4 hours during the
> workday.  He was able to sit for up to 6 hours.  He could occasionally climb
> ramps and stairs, but he could not climb ropes/ladders or scaffolds.  He could
> occasionally crouch and kneel.  He could frequently stoop, but he could not
> crawl.  He had monocular vision.  He needed to avoid unprotected heights and
> dangerous machinery.  He was also limited to frequent grasping/gripping,
> pushing and pulling with the upper extremities.

(AR 461–62.)  Later in his decision, the ALJ added that King was limited to "occasional

reaching." (AR 463.)  Given this RFC, the ALJ found that King was unable to perform his

past relevant work as a highway maintenance supervisor/working supervisor, a bridge

maintenance mechanic, and other highway maintenance worker, which occupations the ALJ

found involved medium or heavy, skilled or semi-skilled work. (*Id.*)  Nonetheless, the ALJ

determined that there were other jobs existing in significant numbers in the national

economy that King could do, including sales attendant, furniture rental consultant, price

marker, parking lot attendant, escort, and fundraiser. (AR 464–65.)  The ALJ concluded

---

[1]  "Amblyopia" is "[p]oor vision caused by abnormal development of visual areas of the brain in response to abnormal visual stimulation during early development." *Stedman's Medical Dictionary* 58 (28th ed. 2006).

that King had not been under a disability from his amended alleged disability onset date through his date last insured.  (AR 465–66.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder.").  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  In

its deliberations, the court should bear in mind that the Social Security Act is "a remedial

statute to be broadly construed and liberally applied."  *Dousewicz v. Harris*, 646 F.2d 771,

773 (2d Cir. 1981).

## Analysis

King argues that the ALJ erred at step five of the sequential analysis for two reasons:

(1) the ALJ relied on occupations that could not be performed under the RFC determination

stated in the ALJ's decision; and (2) in determining which jobs King could do, the ALJ did

not account for enough erosion of the occupational base for unskilled work.[2]  King claims

that he has met the criteria for disability under a framework analysis at step five, and thus

the matter should be remanded for calculation of benefits rather than for further proceedings

and a new decision.  In response, the Commissioner asserts that the ALJ properly relied on

the testimony of the VE in finding that there was work in the national economy that King

could do, and that King was not disabled under the regulations.  The Commissioner further

asserts that, if error is found, the Court should remand for further administrative

proceedings, not for calculation of benefits.

---

[2] In support of his motion, King has filed two administrative decisions in unrelated disability cases involving unrelated claimants, with identifying information redacted.  (*See* Doc. 7-1.)  King states that these decisions "were offered as examples of how framework analyses are conducted at the [administrative] level" (Doc. 7 at 6 n.1), and argues that they are "examples of the proper outcome of a framework analysis" in cases similar to this one (Doc. 9 at 4).  The Commissioner accurately points out that these decisions were removed from the administrative record (*see* AR 738–63) because they do not relate to King.  (*See* Doc. 8 at 10–11; *see also id.* at 11, n.1 (citing the Social Security Administration's "Hearings, Appeals, and Litigation Law Manual" (HALLEX), Transmittals I-4-1-51(B) and I-4-1-54(D)).)  The Court notes that the ALJ received these decisions into the record at the second administrative hearing (AR 477), and thus they may be considered.  But they are neither binding nor persuasive authority, given that they involve different claimants with different vocational factors.

For the following reasons, the Court finds that the ALJ erred at step five by relying on occupations that could not be performed under the RFC determination stated in the ALJ's decision.  The Court further finds that a remand for further proceedings and a new decision is the proper remedy, rather than a remand for calculation of benefits, as discussed below. Given these findings, the Court does not reach King's additional argument regarding the ALJ's failure to account for enough erosion of the occupational base for unskilled work at step five.

**I.**     **Substantial evidence does not support the ALJ's step-five determination that work exists in significant numbers in the national economy that King can do.**

Where a claimant has been successful at step four of the sequential analysis in showing that he is unable to perform his past relevant work, the Commissioner has the burden of proving at step five that "the claimant still retains a [RFC] to perform alternative substantial gainful work which exists in the national economy."  *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  In the ordinary case, the Commissioner satisfies this burden by resorting to the applicable medical vocational guidelines ("the Grids"), 20 C.F.R. pt. 404, subpt. P, app. 2 (1986).  *Id.*  But where, as here, the claimant suffers from an additional nonexertional impairment which has "any more than a 'negligible' impact on [his] ability to perform the full range of work," the ALJ cannot rely on the Grids and instead must obtain the testimony of a VE.  *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (quoting *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)).  In other words, "when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full

range of employment indicated by the medical vocational guidelines, then the

[Commissioner] must introduce the testimony of a [VE] (or other similar evidence) that jobs

exist in the economy which claimant can obtain and perform." *Bapp*, 802 F.2d at 603;

*see Roma v. Astrue*, 468 F. App'x 16, 21 (2d Cir. 2012); SSR 83-12, 1983 WL 31253, at *2

(1983) (when a claimant's RFC does not coincide with the exertional criteria of any one of

the external ranges, *i.e.*, sedentary, light, or medium, and when it is unclear how extensively

claimant's limitations erode the occupational base, the ALJ must consult a VE).

Here, the ALJ found that King's "ability to perform all or substantially all of the

requirements of [light] work was impeded by additional limitations." (AR 464.) Thus, the

ALJ was required to—and did—consult with a VE at the May 2014 administrative hearing

about whether there were jobs in the economy that King could perform. (*Id.*) The ALJ

stated in his decision that, in order to determine "the extent to which [King's additional]

limitations erode the unskilled light occupational base," he "asked [the VE] whether jobs

existed in the national economy for an individual with [King's] age, education, work

experience, and [RFC]." (*Id.*) Three hypothetical scenarios were presented to the VE at the

administrative hearing. The first hypothetical described an individual with King's age,

education, and past work experience, plus an ability to do only light work with additional

limitations but no reaching limitations. (AR 494.) The VE testified that such a hypothetical

claimant could perform the jobs of ticket seller, sales attendant, price marker, parking lot

attendant, fundraiser, and escort. (AR 497–99.) The second hypothetical–presented to the

VE by King's attorney–described an individual with the limitations stated in the first

hypothetical plus the limitation of "occasional forward reaching and no overhead reaching."

(AR 520.)  Once these additional limitations were added, the VE testified that only one job

could be performed: furniture rental consultant.  (*Id.*)  The third hypothetical to the VE

described an individual with the limitations stated in the first hypothetical plus additional

limitations in grasping/gripping and pushing/pulling.  (AR 521–22.)  The ALJ explicitly

stated that he did not intend to include a "reaching" limitation in this hypothetical.

(AR 522.)  The VE testified that this hypothetical claimant would not be precluded from

performing the jobs of ticket seller, sales attendant, and price marker.  (*Id.*)

Critically, the VE was not presented with a hypothetical scenario which included

"occasional reaching" in all directions (as opposed to "occasional forward reaching and no

overhead reaching"), and yet this is how the ALJ assessed King in his decision.

(*See* AR 463.)  Specifically, the ALJ wrote in the RFC portion of his decision: "The new

limitations added herein limiting [King] to *occasional reaching* and to frequent grasping,

pushing[,] and pulling with the upper extremities is also consistent with [King's]

testimony."  (*Id.* (emphasis added).)  This "occasional reaching" language is not included in

the ALJ's bold RFC assessment recorded next to heading five in the ALJ's decision, even

though this heading would typically include all of a claimant's limitations as assessed by the

ALJ.  The Court is not prevented, however, from looking elsewhere in the ALJ's decision to

determine what limitations the ALJ assessed King as having; indeed, the Court must

consider *all* portions of the ALJ's decision in determining whether it is supported by

substantial evidence.  *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (looking to

"other portions of the ALJ's decision" and to clearly credible evidence to find the ALJ's

determination supported by substantial evidence).  The Court thus finds no support for the

Commissioner's assertion that the ALJ's RFC determination does not include any reaching limitations because those limitations are included merely "in the body of the RFC portion of the decision" rather than in heading five.  (Doc. 8 at 7.)  *See Saiz v. Barnhart*, 392 F.3d 397, 399–400 (10th Cir. 2004) (rejecting Commissioner's effort to disavow a significant reaching limitation, where the ALJ himself acknowledged that limitation in the body of his decision).

Though the ALJ's failure to include the limitation for "occasional reaching" in his bold RFC assessment stated next to heading five is not a critical error, it adds confusion to the decision, as acknowledged by the Commissioner.[3]  Moreover, given the ALJ's finding in the body of his decision that King was limited to occasional reaching, the ALJ clearly erred in determining that King could perform the jobs of sales attendant, price marker, parking lot attendant, escort, and fundraiser; all jobs which, according to the VE, required more than occasional reaching.  (AR 464–65, 520–21.)  *See Allen v. Barnhart*, 357 F.3d 1140, 1143 (10th Cir. 2004) ("The difficulty with the ALJ's decision stems from his failure to link his [own] findings regarding [plaintiff's] RFC to his conclusion regarding [plaintiff's] vocational opportunities, resulting in a flawed assessment of [plaintiff's] disability status."). These errors might be considered harmless if substantial evidence supported the ALJ's additional determination that King could perform the job of furniture rental consultant. (AR 464.)  As stated above, the VE testified that this job could be done by a hypothetical claimant who was limited to only occasional forward reaching and no overhead reaching. (AR 520.)  But those reaching limitations do not match the ALJ's assessment in his decision

---

[3] The Commissioner states: "[King's] confusion [about an assessed reaching limitation] might stem from the ALJ's use of the words 'occasional reaching' in the body of the RFC portion of the decision (Tr. 463)."  (Doc. 8 at 7.)  As explained above, the Commissioner's attempt to overlook the ALJ's assessed reaching limitation, merely because it is not included in heading five of the decision, is misguided.

that King was limited to only occasional reaching generally in all directions (AR 463).[4]

Presumably, there are vocational differences between an individual who is limited in his

ability to reach in every direction (forward, backward, to the sides, and overhead) and an

individual who is limited in his ability to reach only forward and overhead.  *Cf. Young v.

Comm'r of Soc. Sec.*, No. 7:13–CV–734, 2014 WL 3107960, at *12 (N.D.N.Y. July 8, 2014)

(remanding for further proceedings, where hypothetical to VE included limitation of "no

more than occasional reaching overhead on the right side," while ALJ's RFC assessment for

plaintiff included "a more extensive limitation of no overhead reaching using the right,

upper extremity"); *Saiz*, 392 F.3d at 400 (noting that "reaching is required in almost all

jobs," and holding that "[t]he presence of th[e plaintff's] particular [reaching] limitation,

specifically in connection with a sedentary RFC, is not a technical or formalistic point")

(internal quotation marks omitted); SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985)

("Significant limitations of reaching or handling . . . may eliminate a large number of

occupations a person could otherwise do.  Varying degrees of limitations would have

different effects, and the assistance of a [VE] may be needed to determine the effects of the

limitations.")

 Here, remand is required so that the ALJ may obtain testimony from a VE about a

hypothetical claimant who possesses King's particular limitations, as assessed by the ALJ.

*See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a [VE's]

---

 [4] Even the Commissioner concedes this point, if only by implication due to her failure to recognize the significance of the ALJ's assessment that King had a reaching limitation, stating in her motion: "[T]he ALJ did not find that Mr. King had the reaching limitation contained in counsel's hypothetical question to the VE (Tr. 461–62)" (Doc. 8 at 6 (citation omitted)), and: "[T]he ALJ did not incorporate the limitations put forth by counsel, including occasional forward reaching and no overhead reaching, into the RFC (Tr. 461–62)" (*id.* at 7).

testimony regarding a hypothetical as long as there is substantial record evidence to support the

assumption[s] upon which the [VE] based his opinion, and [the hypothetical] accurately reflect[s]

the limitations and capabilities of the claimant involved.") (second alteration in original) (citation

and internal quotation marks omitted); *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)

("The [VE's] testimony is only useful if it addresses whether the particular claimant, with

his limitations and capabilities, can realistically perform a particular job."); *Smith v.*

*Comm'r of Soc. Sec.*, No. 2:10-cv-176, 2011 WL 6372792, at *11 (D. Vt. Dec. 20, 2011)

("[VE] [t]estimony elicited by hypothetical questions that do not relate *with precision* all of

a claimant's impairments cannot constitute substantial evidence to support an [ALJ's]

decision to deny benefits.") (internal quotation marks omitted).  On remand, if the VE

testifies that a hypothetical claimant with King's vocational factors and assessed limitations

would be able to do *only one representative occupation*, as the VE testified a hypothetical

claimant with King's vocational factors and the limitation of occasional forward reaching

and no overhead reaching (as well as King's other assessed limitations) could do, the ALJ

should explicitly consider and determine whether this one occupation exists in significant

numbers in the national economy, as required at step five.  *See* 20 C.F.R. § 404.1566(b)

("We will not deny you disability benefits on the basis of the existence of . . . [i]solated jobs

that exist only in very limited numbers in relatively few locations outside of the region

where you live.").  Here, given the ALJ's erroneous determination that King could perform

six different representative occupations, including that of furniture rental consultant, the

ALJ did not specifically consider this issue, other than perfunctorily stating in a

parenthetical that 56 furniture rental consultant jobs exist in the State economy and 49,378

in the National economy.  (AR 464.)  *See Allen*, 357 F.3d at 1144 ("[b]ecause the ALJ

erroneously relied upon 800 publicly interactive jobs, despite the direct conflict with his

RFC findings, he never had occasion to decide if the [100] surveillance jobs alone

constituted a significant number").

**II.     The proper recourse is to remand for another decision rather than reverse
         for a calculation of benefits.**

King requests that the Court reverse and remand solely for a calculation of benefits.

In cases where there is "no apparent basis to conclude that a more complete record might

support the Commissioner's decision," reversal for a calculation of benefits may be

appropriate.  *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).  Courts have reversed and

ordered that benefits be paid when the record provides persuasive proof of disability and

remand for further proceedings "would serve no purpose."  *Parker v. Harris*, 626 F.2d 225,

235 (2d Cir. 1980).  Where, however, there are gaps in the administrative record or the ALJ

has applied an improper legal standard, it is more appropriate to remand for further

proceedings and a new decision.  *Rosa*, 168 F.3d at 82–83; *see also Pratts v. Chater*,

94 F.3d 34, 39 (2d Cir. 1996).  Here, there is a gap in the administrative record: there is no

VE testimony about whether jobs exist in significant numbers in the national economy that

King can do.  Thus, King's request that the matter be reversed and remanded solely for a

calculation of benefits is DENIED.  *See, e.g.*, *Michaels v. Colvin*, No. 14-2506-CV, 2015

WL 4772408, at *2 (2d Cir. Aug. 14, 2015) (remanding for further proceedings where

"hypotheticals are not currently sufficient to resolve the Step[-]Five inquiry, because it is

not clear that they accurately represented [plaintiff's] limitations"); *Selian*, 708 F.3d at 422

(remanding for further proceedings where ALJ erred by not determining whether plaintiff's reaching limitation precluded reliance on the Grids and where ALJ failed to obtain VE testimony on the issue); *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations.") (citation omitted).

The Court notes that King's disability claim was initially filed in December 2009 and thus has been pending for over five years. Moreover, the Court is mindful of the "often painfully slow process by which disability determinations are made, and that a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay." *Butts*, 388 F.3d at 387 (citation and internal quotation marks omitted). Nonetheless, the Second Circuit has held that, "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). Here, the Court is unable to find that King was disabled during the relevant period, based on the current record, and thus the Court may not remand for benefits merely based on the lengthy period that King's claim has been pending. Furthermore, the delay in adjudication of King's claim, while unfortunate, is not so egregious that the imposition of time limits on the ALJ's new decision is required. *See, e.g.*, *Cabrera v. Astrue*, No. 06 Civ. 9918(JCF), 2007 WL 2706276, at *11 (S.D.N.Y. Sept. 18, 2007).

## Conclusion

In sum, the Court cannot find that substantial evidence supports the ALJ's determination that there are jobs existing in significant numbers in the national economy that King can do, because the VE did not testify about a hypothetical claimant who had the same particular limitations assessed by the ALJ in his written decision.  Specifically, as stated above, the VE did not testify about jobs that a hypothetical claimant with King's vocational factors and functional limitations, *including the ALJ's assessment of only occasional reaching*, could do.  Remand is required to obtain this testimony from the VE.

Accordingly, the Court GRANTS King's motion (Doc. 7), in part; DENIES the Commissioner's motion (Doc. 8); and REMANDS for further proceedings and yet another decision.

Dated at Burlington, in the District of Vermont, this 21st day of September, 2015.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge